May it please the court, counsel, your honors, my name is Tom Cogley, and I represent the appellant and petitioner in this matter, Miss Tiffany Bernard. If the court isn't aware, I'll be splitting the first 12 minutes of our argument with Mr. Kelderman, six minutes and six minutes, and then he will handle the three minutes of our rebuttal time. In my time here today, I hope to convince your honors that you should overturn the district court's decision to deny the government's motion to dismiss using the collateral order doctrine. Alternatively, I hope that you will consider issuing a writ of mandamus on my client's behalf or conceivably on the government's behalf as well, in order the district court to dismiss the remaining counts of this action. I think when it comes to the collateral order doctrine, it's a doctrine that's been widely acknowledged. This court relied on it in the United States Dupree decision to grant or overturn a district court's refusal to dismiss a government's motion to dismiss. But can the defendant invoke the collateral order doctrine here? We said in Dupree that the government could, but not necessarily the defendant. Your honor, quite candidly, I would concede the point that in Dupree, this court said that the government can. I do think that between the two of us, the government certainly has the stronger argument. Obviously, there's an opportunity for the defendant to utilize it as well. I don't think as a practical matter it matters, although I concede under the circumstances of this court's decision in Dupree that it's never said that a defendant can utilize the collateral order doctrine. I also have some question here, and you can maybe help me with the facts. What I'm struggling with is the part of the collateral order doctrine dealing with completely separate from the merits. I'm not supposed to counsel this, but the government represented to the district court, look, this is going to be an uphill battle for us to convict Bernard on some of these other charges, which is why we're reaching a plea deal. Remember, the collateral order doctrine requires the issue to be completely separate from the merits. The government asked first to accept the plea deal. District court said no. Second, then to say we're going to dismiss these charges. District court says no. Are either one of those orders completely separate from the merits, given that the government's stated reason was, look, we may not have enough evidence. I mean, maybe there's minimal enough of evidence, but we don't have enough evidence to make this an easy conviction. Yes, Your Honor. I think that's identical to the facts in the Dupree decision. The government set forth some of the same or articulated some of the same basis for why the motion to dismiss was made in Dupree. In other words, both what happened in this case and both what the government articulated in this case as the basis for why it might make the motion and in Dupree were similar. And so I would say that this court determined that those were separate issues from the merits in the Dupree case, and there's no reason to deviate from that line of reasoning in this case. What would you describe as the important issue? Whether or not the government has to proceed with the remaining charges. So it's a government authority separation of powers sort of issue? Yes, Your Honor. And of course, Bernard doesn't share that. Bernard's only interest is not getting convicted of more offenses. I can't argue with that, Your Honor. And that's why I do concede the point that with respect to the collateral order doctrine, I think the government's argument on that is stronger than Ms. Bernard's. The government filed the cross appeal under the collateral order doctrine. I think Ms. Bernard's best avenue for relief is through a mandamus petition. She's trying to do exactly what the defendant did in the D.C. District Court of Appeals. In that case, the court obviously ruled or denied the mandamus relief because the district court hadn't even made the decision yet. But in talking about the options available to the defendant in that case, in the event the court denies the motion, it mentioned a few different things. One of them was he could seek relief or somebody could seek relief under the collateral order doctrine, citing to this circuit's decision in Dupree. So that decision was in 2020. It's still being recognized as good law in this circuit and in the D.C. Circuit Court of Appeals. The other thing that the Court of Appeals said in that case was that she could perhaps seek a fresh mandamus petition after the denial comes through. And that's what we're doing. The final thing that it said was that she could perhaps seek something after sentencing. Well, I tried to file, I did file a motion for sentencing on this count that she pled guilty to to try to get us to that point. But we were rebuffed in that area as well by the district court. And so that really only leaves, particularly if the court all agrees that the collateral order doctrine doesn't apply as to Ms. Bernard, that really just leaves her with the opportunity for a mandamus petition. I want to give you a chance to go to the merits. So Judge Kornman says the order under review really is, I refuse to dismiss these charges. Why should we issue relief and say Judge Kornman was wrong under the law? Because it does require a leave of the court. Because of the separation of powers issues, because the fact that charging decisions are the province of the executive branch and the government, this circuit has said in Jacobi-Zavalli that those types of decisions are best left to the prosecution. And unless the district court can point to some bad faith on the part of the prosecution, it must grant that motion to dismiss. The circuit, the district court was very clear that it didn't have anything like that. It simply disagreed with the decision to do it. I see that my time is up. Thank you, Your Honors. Mr. Kelderman, you may proceed when ready. May it please the Court and counsel, I'm Eric Kelderman on behalf of the United States in this appeal. The United States is asking that the Court find that the collateral order doctrine allows the appeal here, and that it further find that the district court abused its discretion in refusing to dismiss the four charges, remaining charges against Ms. Bernard. The decision here is reviewable under the collateral order doctrine for precisely the reasons laid out in Dupree, as was discussed earlier. This is a situation where the district court would be, and in some ways is, forcing the United States to go to trial on charges that it tried to explain it may not be able to get a conviction on. Well, is that completely separate from the merits? I mean, one of the things is, you know, when you're talking about the merits, the merits are guilt or innocence. The collateral order doctrine cases in the criminal arena are absolutely clear on that. Yet Dupree and other cases seem to suggest, no, that is completely separate from the merits. I don't see that if your reason is, oh, we don't have enough evidence to convict. Your Honor, I agree and I understand there is a number of, there are a number of decisions from other circuits where they talk about it as a mandamus issue. When this sort of a thing has arisen in other circuit courts of appeals, they have addressed it as a mandamus issue. Here, in this circuit, the United States submits that Dupree is binding precedent and it says that this is an issue separate from the merits and it's been that way for well over 40, or for over 40 years now, I believe. And so that's why the United States is asking for a collateral order relief here. Counsel, is there a need for us to remand this to the district court for a finding of good, bad faith on the part of the government or should we remand it for that determination because it was not made? Your Honor, I believe that Judge, the district court was clear that it knew the law. It knew what was applicable. It was very thorough in its review. It even had Jacobo Zavala, Dupree cited in its order. And I submit to you that there's no basis for any finding that there was improper behavior, bad faith, bad motive. The prosecutor, the district court had before it the victim, the victim's wife, the victim, a non-English speaking person, and the prosecutor explained, we tried to contact them numerous times. I think he said we have a matrix of all the different contacts that were attempted. The victim and his wife, between the two of them, both agreed that, yeah, they had tried to contact us. And that's what the Crime Victims Rights Act requires. That's the only possible place where there could have been any, even a hint of anything that the prosecutor did that was improper. And I'm not suggesting that there is in any way anything improper about what the prosecutor did. This is a very experienced prosecutor who has prosecuted cases for well over 15 years now, I believe. He is someone who knows how to evaluate a case. Ms. Bernard was the reason that they were able to prosecute anyone. She came forward. They were trying to figure out how to prosecute this case after Mr. Alanes was injured. They finally got her to do a proffer. And I believe Mr. Cogley was involved in that at that point. But in any event, she provided information. And that's how the prosecution was able to go forward. Yeah, but Judge Corman also said, you know, that all that may be true, but the reason why he wasn't granting the motion was because she was by far the most culpable. She set it up. And remember, somebody was beaten. This is a case where somebody was beaten to an inch of their life. Indeed. And that's absolutely why it was prosecuted. And Ms. Bernard is not. She didn't plead to a misdemeanor. She pled to a 15-year maximum felony. Some of that was taking into consideration the cooperation that she had given the other people. No one knew anything about them until she told about them. But to your point, Judge Strauss, FACR services, Jacobo Zavala, a number of other cases say that that is the one thing that a court is not allowed to take into consideration. Separation of powers, that is a decision made by the executive branch. And that is, it's the, basically the thing that the executive branch is most suited to doing is evaluating a case and looking at the strength of it. Counsel, I want to ask you. Oh, go ahead. Did you want to save any time for rebuttal? I've got three minutes on a separate clock. These are a separate clock. Okay. So I wanted to ask you about the different orders in this case. So the first time you had the district court say, no, I'm not accepting the plea agreement. And you would agree, I think, that there was discretion for the district court judge to do that. Because that's a different deal. But on dismissal, you say that's solely a prosecutorial function and the district court has no place other than in limited circumstances. The district court under Rule 11 has discretion to accept or reject a plea agreement, really as much as it wants to, in any case. But the decision on the dismissal, be it, if you call it under Rule 11 or you say it's under Rule 48, the United States, I would submit that it's Rule 48 in any event. No matter what. Rule 48 is what provides for dismissal. The leave of court there may only be  And that's a different deal. or an improper motive. And there is none that is shown here. And Judge Korman did not find any in this case either. Thank you, Mr. Kilderman. And I'd like to reserve that three minutes for rebuttal. Mr. Magnuson, you may proceed when ready. The court would also like to extend our appreciation to you for serving as counsel for the amicus. And we appreciate that. Thank you, Your Honor. May it please the Court. My name is Landon Magnuson, amicus curiae appointed by this Court to offer counsel or provide counsel in support of the order by the Honorable Justice Charles Korman of the United States District Court for the District of South Dakota. The primary issue, I think, that needs to start this case, under any circumstances, determining the lens through which it must be considered, whether this is a Rule   48 case. The reason for that is because Rule 11 grants judges significant discretion in accepting or denying a guilty plea, or a plea agreement, let's just say. One way or the other, that's immense. And this Court's determination as to whether this case should fall under the collateral order exception or not can often weigh heavily in one direction or another, although I will state later that I don't think it should matter either way. But certainly if the collateral order exception did fall under the collateral order exception, if it was activated in this situation, it would certainly make a big difference, I think, if this is a Rule 48 case. Now, the determination, I think, we could go — well, let's just say the United States and Ms. Bernard are working to do their darndest to really cleave the Rule 48 motion that they called afterward from the plea agreement that they submitted to the Court. But I would ask this Court to look directly to the brief, the opening brief of the United States in determining whether they should go under the collateral order exception. And in the very first sentences of their brief on Roman numeral page 1, to use their language, this case is about the district court, quote, denying the government's motion to dismiss charges as part of a negotiated plea agreement. Just a few sentences later, the government appeals the denial of its motion to dismiss charges under the terms of a plea agreement. Even the United States in this situation puts the plea — the dismissal that they requested as part and parcel, as inextricably linked to the plea agreement that they provided. In the United States v. Kerrigan, a case cited frequently during my brief, which comes from the Tenth Circuit, the United States looked at that, or the Court looked at that, and noticed that when the ultimate effect of a dismissal or an attempted dismissal after the fact, when a judge has already denied a plea agreement, and then the United States decides, well, we're going to work to dismiss this anyway, would be to restrict the district court's ability to impose what it considered an appropriate sentence. Well, isn't that the difference, though? I mean, so with a plea agreement, some plea agreements, you know, effectively limit the district court's discretion in terms of the sentence that he or she can impose. With a straight-up dismissal, there's no — the district court gets to do whatever he or she wants with respect to their one remaining charge. And so doesn't that make it different in kind between the two different actions that Judge Kornman took? I'm not sure I completely understand, Your Honor. If I did, I — please. Yeah. So the point is, is you can reject a plea agreement. The district court can reject a plea agreement because presumably their sentencing discretion is confined to some extent in certain types of plea agreements. With respect to a straight-up dismissal, there might be less of a reason to allow the district court to allow — to have any say over a straight-up dismissal because the district court still has unrestrained discretion to sentence on whatever crimes remain. Correct. But one of the reasons — when we look at different kinds of plea agreements as considered by the rules of criminal procedure, there are certainly charging agreements and then sentencing agreements, charging where you would say we're going to dismiss certain charges or seek the dismissal of certain charges, sentencing where we'd seek a sentence. In this situation, and I think this really kind of also mirrors Kerrigan, by seeking to dismiss these — these other charges, what they're doing is they're forcing the court essentially to accept a sentencing range. They're saying, you know, Your Honor, we understand that it's your — your discretion ultimately to decide what this individual deserves as a sentence, but we think that even despite of these — all these charges that we brought in the — in the beginning, that you're not allowed to give her more than a 15-year sentence, regardless her criminal history, notwithstanding anything else that happened. And we're going to work to — to impede your ability to do so by — by forcing the court using 48. If, indeed, this is a situation where there's a separation of powers and one party is — is invading another's, it very well could be that the United States is invading the — But the government doesn't think it has the sufficient proof and does not want to risk an acquittal. And — and the flip side of your coin, then, is the judge is forcing the government to run that risk in spite of the fact that the prosecution decisions are generally almost exclusively vested with the executive. Isn't that the other way of looking at it? Not so, Your Honor. The United States is in no way forced to prosecute an individual. Generally, when a plea agreement is denied, the United States has several options still. They could, for example, go back to the defendant and renegotiate. They could seek to — to obtain an agreement that is agreeable to the judge that they can then move forward with and then, case done. Alternatively, the United States could simply move forward towards — towards trial, and when they are called, they could simply rest. One way or the other, they have a guilty plea for the robbery count already, and moving forward on all the other counts wouldn't be necessary for the United States. So you're suggesting here that the district court would be okay if the government showed up at trial with no witnesses and simply rested? Well, ultimately, it is the United States province to determine how to prosecute a case, Your Honor, and it isn't the court's decision how and — and where they're going to do it. Ultimately, they have to be able to bring the case and prove whether or not an individual is guilty. So it's — it's certainly a straw man for the United States to come forward. I mean, I wouldn't want to be the prosecutor going in front of any district court having had a Rule 48 motion denied and saying, look, we got nothing, Judge, no opening statement, no witnesses, the government rests. You're putting these — these prosecutors in a pretty tough position when the easier alternative, I think, is a Rule 48. And you pointed out earlier that, you know, the government talked about Rule 11 in the plea agreement. In the — in the denial of the motion to dismiss, the district court talks solely about Rule 48. Correct. The district court thought it was a Rule 48 denial. Wouldn't you agree with that? Or am I misreading the record? No, Your Honor. I think that based on the record and — and based on the motions that were presented to the court at that — at that point in time, it's very clear that I think the direction of — of arguments were pointed in that direction, just as they were here when you had two parties who, if they get to choose a direction they want to go, they want to take Rule 48 because it's simply better for them to do so. But one way or the other, I think it's important for this Court to — to recognize that — that, yes, this could be considered a clash of — of separation of powers, but to consider simply that the Court is — is usurping the authority of the executive to prosecute an — an individual, I think, turns a blind eye to the fact that the United States is seeking to — to impede or strip away its ability to penalize or to sentence someone based on its — its just wisdom. The alternatives here, just to add to — to Judge Kobach, you not only have the problem of potentially tempting contempt in the sense of walking in and saying, hey, judge, we know you — you decided this, but we're not presenting evidence. That's a — that's a recipe for contempt, potentially. But you also have the issue of, you know, the defendants already negotiated a — a So what incentive does the defendant have, then, to say, well, I really like the robbery thing, but because the judge is forcing me, I'm also going to throw in another charge as well? That seems to be — to be a problem in and of itself, isn't it? It is, Your Honor. But ultimately, each individual who — who moves as a defendant to negotiate a plea agreement with the United States should be well aware of the fact that a judge is under no compulsion to accept a plea agreement as it's offered. So any defendant, as they're coming forward, they can say, certainly, let's — let's do this. But the United States would be lying to that defendant if they said, you're guaranteed to get this, I promise. Certainly, and it would be abusive if they were to say, and we're going to guarantee we get it because we're going to Rule 48 these things out of here and force the judge to — to sentence you as we think we should. One way or the other, though, looking through it through both lenses, this wouldn't fit under the collateral order exception. Just as it was stated a few moments ago, in each situation, this would go directly to the merits of the matter. If — if it is a Rule 11 case, the culpability of the individual would certainly be part and parcel of the merits of the case. I agree with you up to a point, and that's why I mentioned the argument. But we actually — the collateral order doctrine is very, very clear that you look at — at orders as a class. And there are classes of situations where it would be separate from the merits. For instance, if the reason why they were cutting her a deal was because they couldn't convict the other co-conspirators, that wouldn't be due to the — to the weakness of the evidence. That would be due to the fact they don't have enough evidence against everybody else, which is completely separate from the merits. So I'm struggling because I think the most common situation actually is this one, but there are situations in which it would be completely separate from the merits. Understood. But even with the struggle, I — I don't think the Court needs to get in that direction because there would certainly be other related relief for Ms. Bernard. Cases show, and even some of the cases cited by the Court, if this is under Rule 48a, for example, Jacobo Zavala, that both parties have cited repeatedly, was one where they lost and won on appeal. It — it — essentially, as a result, it's hard to say that the collateral order doctrine would directly apply under either circumstance. The United States also, you know, complains consistently that, well, we don't have the opportunity to appeal either. As I stated earlier, I — I believe that's a strawman simply because the Court can't force the United States to continue with a prosecution anyway. But even then, considering what the other results of the case would be, for example, if — if Ms. Bernard had been exonerated on all counts, there'd be — it would be silly to kind of claim that the United States was deprived of an opportunity to appeal. Excuse me, Your Honor? I mean, are you sure the Court couldn't force the government to put on a case? No. I'm — I'm sure that I — you know, frankly — You show court, and — and the district court judge says, where's your first witness? And Mr. Kellerman says that we're not putting anyone on, and the district court says we're going to continue this until you produce your first witness. Otherwise, you're going to be held in contempt. That — that's a difficult question, Your Honor. Ultimately, I — I will have to sit back and rely on the United States v. Kerrigan and the opinion provided by the Tenth Circuit there, where it essentially took on this case. It's really hard for the United States to necessarily say that there would be some kind of opportunity or requirement that it — that it prosecute. And ultimately — Isn't that exactly where we're at? I mean, in the regular course here, the motion to dismiss has been denied, and the United States will be required to appear in court in May, I think, to try this case. I think certainly, Your Honor, at that point, there would certainly be a case, again, to be brought up under — under maybe mandamus at that point in time. This, I think, is a different issue. One thing also to consider, though, is a lot of the cases that were pointed out directly by the other parties, specifically the Dupree case, where there was just the claim that this should be that case, that — that even if we got to the point under, you know, just to say that — that it should apply or the collateral order doctrine should apply, even if this was a 48A case, I would say, first off, if it isn't a 48A case, if it's an 11 case, then Dupree wouldn't — wouldn't really apply here. In that situation, there was no plea agreement at issue. It was strictly a court trying to — or the United States trying to dismiss all charges. In that case, if the Court recalls, there — there had been a lot of time that had passed since the initial charging. The defendant in that action — well, the United States said that a lot of the evidence had — had kind of disappeared. A lot of memories had faded. They didn't feel that it was worthwhile moving forward. So there was no plea agreement. It wouldn't have fit under Rule 11. That would have been purely a Rule 48 case. And even if it is a Rule 48 case and this Court should decide that it should move forward under those terms, it's — it's hard to say that Dupree is directly applicable in the situation where this Court used language consistently, like in the unusual circumstances of this case, saying that this is a very different case. It's hard to — to claim that that would be directly there. In addition, so if — if — well, so just to answer the first question, does the collateral order exception apply in this case, I'd say no. If — as to the second question, if the collateral order exception applied, should this Court still affirm the Court's decision? And I would say yes, under Rule 11, absolutely, because the district court has authority to accept or reject guilty pleas for, among other things, that he feels there's undue leniency. Under the sentencing guideline, it specifically says that a court may accept a plea agreement if it determines that the remaining charges adequately reflect the seriousness of the actual offensive behavior. And that was precisely the reason why Judge Kornman rejected the plea agreement. But if it's a Rule 48 case? If it's a Rule 48 case, Your Honor, I — frankly, this is the point where I have to say, as amicus counsel, that's a very hard question. And I — I don't think I can — can directly stand here and say, absolutely, must affirm. I think that one thing to consider or look at is, under the Rinaldi case that specifically talks about this, it — it identifies prosecutorial misconduct as the overriding reason. That's the language that the Court uses. The overriding reason for allowing a court or — or reserving the language which says that it's with leave of court being the overriding reason would necessarily include the fact that it shouldn't be the only reason. Unfortunately, that would require this Court, I think, to tread new territory. But, again, I don't think that that would be the direction that this Court has to go. Finally, as far as Mandamus is concerned, I think it's very clear that neither parties do Mandamus in this situation. Well, let me — let me take — that was the question I was going to ask. Let me take issue with that a little bit, because if there's no collateral order doctrine jurisdiction, then there's no remedy available. So shouldn't Mandamus lie in those circumstances? No — no remedy at law? For Ms. Bernard, absolutely not. For either. I would presume the government could say the same thing. If you're not going to let us have Mandamus, let us have — or not going to let us have collateral order, we need Mandamus, kind of like the Flynn decision that came out of the D.C. Circuit. Correct. I notice my time is short. May I, Your Honor? Okay. For two reasons. First, as far as Ms. Bernard is concerned, there are acceptable relief after this. If — after sentencing and conviction, she would be able to move forward under either case, whether it's a refusal to accept a plea agreement or simply a refusal to permit the dismissal of charges, she would be able to come forward and appeal. There are specific cases on this, one of which was cited by the other party, again, the Jacobo Zavala case. I refer to — So she has to incur conviction in order to get relief? Yes, Your Honor. And that's how generally any kind of extraordinary appeal is granted, following the exhaustion or — well, not following, if there are no other adequate forms of relief. As far as the United States is concerned, they have failed to follow Rule 21. Federal Rule of Appellate Procedure 21 requires the party to file a petition, and they haven't done so. And just a side — and I really like the language of this case, and I think it's appropriate here. It comes from this Court in 1983. It's called Equal Employment Opportunity Commission v. Natchez-Butain Products Company. And there, it was a similar case where the United — or the government in that situation had sought appeal under the Collateral Order Doctrine. And they said, alternatively, if the Collateral Order Doctrine doesn't apply, we'd like a writ. They had failed to apply for a writ. This Court, in its words, said the government, quote, which is represented by competent attorneys who regularly practice before this Court should not be able to petition for a writ of mandamus without writing any petition, without serving anything even arguably construable as such to the district court, the nominal defendant in a mandamus action, and without paying any attention at all to the directly applicable Federal Rule of Appellate Procedure. Thank you, Mr. Magnuson. Thank you. All right. Mr. Kelterman, you may proceed. I'll go to the last issue very briefly first. The United States noted in its brief the briefing — the oral argument and the briefing schedule in this case were set before we had made a decision, a final decision on seeking mandamus. The United States certainly intended in its brief to demonstrate to the Court that it was seeking mandamus in the event that the Collateral Order Doctrine is inappropriate. I don't know how well I've explained this or how well I explained it earlier. I believe that every dismissal of a charge in Federal court essentially goes through Rule 48 in some way, shape, or form. The Rule 11 dismissal language I believe that counsel was referring to, the Kerrigan Court in 1985 talked about that. Kerrigan's been cited rarely in other courts of appeals since then. It is something that is a bit of an aberration because, as demonstrated in the United States briefs, in Ocker, in Zavala, in Inouye, United States, and in the United States any number of cases, this dismissal, the United States sought dismissal under Rule 48 after the Court decided to reject the plea agreement and to force it to go to trial. But this is in every way a Rule 48 dismissal. Judge Kornman ruled on it, evaluated the case under Rule 48. That was a case law he cited. That was the evaluation, the analysis that he did in this situation. In other words, Rule 48 is the avenue. And the law is clear under Rule 48 the dismissal may not be denied unless there is some improper motive, and none has been shown here. And there is none in the record. The record is clear that there is nothing to show in that respect either. Mandamus is a proper remedy if the Court determines that the collateral order doctrine does not allow the United States appeal and that the appeal is improper here. Procedurally, how would that work? Would we rule on the first issue, and then the government would file subsequent a petition for writ of Mandamus? Your Honor, I cannot remember off the top of my head the exact rule and what is required, but the United States did put it before this Court in its opening brief and in its reply brief. And so the issue is before the Court. I don't know if it requires a separate filing aside from those two filings. The United States is not, and never was, trying to get into a power struggle with the district judge in any way. It wasn't trying to flex its constitutional muscle to defeat the Court in any way. This was just an evaluation of the strength of the evidence and the proper charge to be brought on this defendant. The United States asked that the Court find the district court abused its discretion and remand for an order to dismiss the charges. All right. Thank you, Mr. Kilderman. I wish to thank all of the counsel. The case was very well presented. Cases 21-3412, 21-3417, and 21-3874 are submitted for decision of the Court.